UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE STANFORD,

        Plaintiff,

v.

KEITH CORBIN, et al.,

        Defendants.
_____/

Case No. 10-cv-11689

Paul D. Borman
United States District Judge

R. Steven Whalen
United States Magistrate Judge

<u>OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SANCTIONS/TO
DISMISS COMPLAINT FILED FOR AN IMPROPER PURPOSE UNDER FEDERAL RULE
OF CIVIL PROCEDURE 11 (DKT. NO. 19) AND GRANTING IN PART DEFENDANTS'
MOTION TO STRIKE THE JOINT DECLARATION IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANTS' RULE 11 MOTION (DKT. NO. 32)</u>

      This matter is before the Court on Defendants' Motion for Sanctions/To Dismiss Complaint Filed for an Improper Purpose Under Federal Rule of Civil Procedure 11 (Dkt. No.19) and Defendants' Motion to Strike the Joint Declaration in Support of Plaintiff's Opposition to Defendants' Rule 11 Motion (Dkt. No. 32). Plaintiff has filed a response to both motions (Dkt. Nos. 22 and 33) and Defendants have filed replies (Dkt. Nos. 27 and 37). The Court held a hearing on both motions on March 8, 2011.

      For the reasons that follow, the Court DENIES Defendants' motion for sanctions or to dismiss, GRANTS Defendants' motion to strike and STRIKES the Joint Declaration (Dkt. No. 22-2), along with Exhibit A to that Joint Declaration, filed in support of Plaintiff's opposition to Defendants' rule 11 motion, but permits the filing of Exhibits B through G of that Joint Declaration.

1

**INTRODUCTION**

Defendants argue that the instant case "is a copycat action, based upon the same underlying facts as the direct and indirect purchaser cases currently consolidated for the purpose of pretrial proceedings in *In re Packaged Ice*, MDL No. 1952 (Case No. 08-MDL-1952) in this District before this Court ("the MDL")." (Dkt. No. 19, Defs.' Rule 11 Mot. 1.) Defendants claim that the Plaintiff here, Wayne Stanford, is a putative class representative for the indirect purchaser class in the MDL case and that the conduct and damages at issue here are already at issue in the MDL case. Defendants claim that Plaintiff has filed the instant action against the individual Defendants, none of whom is named in the MDL case, for the improper purpose of exerting pressure on them to "give up" information on the corporate defendants for use in the MDL case. On this basis, Defendants move for the sanction of dismissal of Plaintiff's complaint in the instant case under Rule 11.

Plaintiff responds that this action, filed solely against the individual Defendants, none of whom is named as a Defendant in the MDL case, is a meritorious claim that stands on its own and which Plaintiff would have pursued without regard to the pending indirect purchaser action in the MDL case. Plaintiff further responds that utilizing the *Stanford* litigation to encourage a settlement in the MDL action is not an improper purpose and that the instant case is well grounded in fact and in law independent of the claims in the nationwide MDL case, relying solely on the admitted illegal conduct of the individual Defendants, and that therefore dismissal (or any sanction) is not appropriate.[1]

---

[1] In support of its response to Defendants' Rule 11 motion for sanctions and to dismiss, Plaintiff offers the Joint Declaration of Max Wild, Matthew S. Wild and John M. Perrin. (Dkt. No. 22-2.) Defendants have filed a motion to strike the Joint Declaration. (Dkt. No. 32.) For the same reasons that Magistrate Judge Whalen granted Defendants' motion to strike a similar "Declaration" filed by the Wild's in support of their motion to disqualify Jones Day and Dykema, this Court will grant

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

    A.     **The MDL Litigation**

In 2008, the Department of Justice ("DOJ") went public with an investigation into the packaged ice industry in the United States. Multiple civil antitrust actions were subsequently filed against the three largest manufacturers of packaged ice in the United States, Reddy Ice Holdings, Inc. and its wholly owned subsidiary Reddy Ice Corporation ("Reddy Ice"), Arctic Glacier Income Fund ("AGIF"), its wholly owned subsidiary Arctic Glacier, Inc. ("AG") and AG's wholly owned subsidiary Arctic Glacier International, Inc. ("AGI") (collectively "Arctic Glacier") and Home City Ice Company ("Home City"). On June 5, 2008, pursuant to 28 U.S.C. § 1407, the United States Judicial Panel on Multidistrict Litigation transferred all pending and subsequent related civil actions to this District, and ordered that they be assigned to this Court for coordinated or consolidated pretrial proceedings. (Case No. 08-MDL-1952, Transfer Order, Dkt. No. 1.) A total of 68 cases have been transferred and consolidated in accordance with the MDL Order. (Case No. 08-MDL-1952, Transfer Order, Conditional Transfer Orders 1-4, Dkt. Nos. 1, 9, 47, 70, 85.)

Of the total cases filed and consolidated, the majority are direct purchaser actions filed by retail stores and gas stations who purchased ice directly from the corporate defendants in the MDL

---

Defendants' motion to strike and strikes the Joint Declaration as well as Exhibit A to that Joint Declaration, which is the Declaration of Max Wild previously struck by Magistrate Judge Whalen. (Dkt. No. 54, Tr. of 9/28/10 Hearing, 5-7.) The Court agrees with Magistrate Judge Whalen that the Wild "declarations," what the Wild Firm refers to as "affi-briefs," are not acceptable practice tools in this district. Like Magistrate Judge Whalen, this Court finds such "declarations" to be "argumentative, largely hyperbolic, and largely not very useful to anybody." Defendants have not specifically objected to the remaining exhibits to the Joint Declaration, Exhibits B-G, and the Court will permit them.

case. On July 1, 2010, this Court issued an Opinion and Order denying the Arctic Glacier and Reddy Ice Defendants' motions to dismiss the direct purchaser class action, finding that the complaint stated a plausible claim for relief. *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987 (E.D. Mich. 2010). On February 22, 2010, this Court granted Final Approval of a Class Action Settlement Agreement between Home City and the direct purchaser plaintiffs. (Case No. 08-1952, Dkt. No. 328.)

A smaller percentage of the MDL cases are those, like the case *sub judice*, that involve individuals who purchased packaged ice indirectly, i.e. purchased packaged ice from retail stores and gas stations. The indirect purchaser plaintiffs in the main MDL litigation allege that the Reddy Ice Defendants, the Arctic Glacier Defendants and Home City conspired to allocate customers and markets throughout the United States, in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. The indirect purchaser plaintiffs in the main MDL litigation seek injunctive relief under the Clayton Act, 15 U.S.C. § 16 and also seek compensatory damages (trebled where permitted) as well as punitive, exemplary and statutory damages under the antitrust and consumer protection laws of 30 (thirty) different states, including Michigan. The indirect purchaser plaintiffs also seek class certification in the MDL action pursuant to Federal Rule of Civil Procedure 23. On June 1, 2009, this Court appointed a group consisting of Levitt and Kaiser, the Law Offices of Max Wild and The Perrin Law Firm, as co-lead interim class counsel for the proposed Indirect Purchaser class. (Case No. 08-1952, Dkt. No. 175.) In the main MDL Litigation, the Court entered an Opinion and Order on March 11, 2011 granting in part and denying in part Defendants' motions to dismiss the Indirect Purchasers' Amended Class Action Complaint.

**B.      The *Stanford* Case – The Instant Action**

In this putative class action, Plaintiff Stanford, also represented by the Wild Firm, purports to represent a class of indirect purchasers of packaged ice in Michigan, and seeks damages from three former corporate officers of Arctic Glacier International, Inc., each of whom pled guilty in October 2009, to allocating customers for packaged ice in Southeastern Michigan and the Detroit, Michigan area, in violation of section 1 of the Sherman Act.  Plaintiff identifies the corporate entities who are defendants in the MDL case, Reddy Ice, Arctic Glacier and Home City, as "co-conspirators" but has not named any of the corporate entities as defendants in this action.  Plaintiff filed his one-count Complaint under the Michigan Antitrust Reform Act, Mich. Comp. Laws § 445.772 ("MARA") and seeks damages based only on the conduct described in the Defendants' guilty pleas. (*See, e.g.* Plaintiff's Motion to Disqualify Jones Day, Dkt. No. 16, p. 1: "[Mr. Stanford] brings this class action under the Michigan Antitrust Reform Act ("MARA") to recover damages caused only by the crimes defendants have admitted.")

The *Stanford* Complaint largely reiterates the allegations contained in the main MDL indirect purchaser action, claiming that Arctic Glacier, Reddy Ice and Home City agreed among themselves to divide the nationwide market for packaged ice into three distinct territories and agreed to refrain from competing with each other in those markets.  The Complaint seeks relief based on the guilty pleas of the individual Defendants, all of whom are former executives of Arctic Glacier, to engaging in a customer allocation scheme in Southeastern Michigan and the Detroit, Michigan area, in violation of the Sherman Act. The Complaint also alleges that a former Arctic Glacier executive, Martin McNulty, was blackballed from the packaged ice industry and retaliated against for his cooperation with the government investigation into the packaged ice industry and relies on the fact

of this allegation as further support for his claims.

## II.     STANDARD OF REVIEW

Under Rule 11 of the Federal Rules of Civil Procedure, the court has discretion to award sanctions (1) when a party presents pleadings, motions or papers to the court for an improper purpose, (2) if the claims, defenses or other legal contentions therein are not warranted by existing law or a nonfrivolous extension of the law, or (3) if the allegations and other factual contentions therein do not have evidentiary support. Fed. R. Civ. P. 11; see *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510 (6th Cir. 2002). The test for imposition of Rule 11 sanctions is whether the litigant's conduct was reasonable under the circumstances. *Salkil v. Mt. Sterling Twp. Police Dep't*, 458 F.3d 520, 528 (6th Cir. 2006).  In order to give a party an opportunity to avoid sanctions, Rule 11 contains a "safe harbor" provision that requires a party seeking sanctions to serve its motion on the opposing party at least 21 days prior to filing the motion. Fed. R. Civ. P. 11(c)(2).

## III.    ANALYSIS

Defendants argue that "this lawsuit (posing a threat of substantial legal fees) was filed for the 'improper purpose' of pressuring the individual Defendants into providing Plaintiff with information it can use against the corporate Defendants in the MDL."  (Defs.' Rule 11 Mot. 6.) Defendants argue that Plaintiff's improper purpose in filing the instant action against the three individual Defendants is conceded in Plaintiff's opposition to the motion for sanctions where Plaintiff "admits that he filed this lawsuit against the three individual Defendants to 'expedite the litigation *against the corporate defendants* in the Nationwide Action' and because 'Plaintiff's Counsel were confident that at least one of the Defendants would be able to offer evidence

establishing a conspiracy beyond Michigan.'" (Dkt. No. 27, Defs.' Reply Br. 1) (emphasis in original). Defendants claim that Plaintiff's improper purpose is clear from Plaintiff's illusory "offer of immunity" given to the individual Defendants, according to which Plaintiff would agree to dismiss the *Stanford* action against any of the individual Defendants who provided "useful" information, i.e. information helpful to prosecution of the nationwide claim in the MDL Litigation, to the Plaintiff.

Defendants do not appear to claim that Plaintiff's Complaint is "frivolous," although at the hearing on this matter counsel for Arctic Glacier pointed out to the Court that many issues remain to be decided in the case, such as the size and scope of the Defendants' liability and the propriety of class certification. Defendants argue, however, that even a colorable complaint is not immunized from Rule 11 sanctions where it is filed for an improper purpose. (Defs.' Reply Br. 2.) Defendants argue that Plaintiff improperly relies on case law that pre-dates the amendments to Federal Rule of Civil Procedure 11 which amendments, Defendants argue, make clear that the two inquiries under Rule 11, i.e. whether a paper is well grounded in fact and law and whether a paper is filed for an improper purpose, are separate inquiries and dismissal is an appropriate sanction for a violation of either subsection of the rule.

Defendants rely on *FDIC v. Maxxam, Inc.*, 523 F.3d 566 (5th Cir. 2008), as standing for the proposition that a complaint filed for an improper purpose is not immunized from Rule 11 sanctions simply because it is well grounded in fact and law. (Defs.' Reply Br. 2-3.) Defendants' reliance on *Maxxam* to support dismissal in this case, however, is misplaced. In *Maxxam*, the Federal Deposit Insurance Corporation ("FDIC), as manager of a resolution fund involving the failed United Savings Association of Texas, filed suit against Maxxam (also involving Charles Hurwitz, Maxxam's CEO)

for its alleged involvement in the failure of the Texas thrift. 523 F.3d at 568. The district court concluded that the FDIC's claims against Maxxam were baseless and were filed for the improper purpose of gaining government ownership of over 4000 acres of California redwoods owned by Maxxam (Hurwitz). *Id*. at 569. The court imposed sanctions of over $72 million. *Id*. at 576.

Reviewing the decision of the district court, the Fifth Circuit first concluded that the district court had clearly erred in its factual findings and erred in its legal conclusion that the FDIC claims were factually baseless and frivolous pleadings. Turning to the issue of improper purpose, the court noted that the "court's discretion to impose sanctions for an improper purpose under Rule 11 and its inherent power is bounded." 523 F.3d at 580. The court recognized that while a court generally will not sanction attorneys who make non-frivolous representations, they may do so "where it is objectively ascertainable that an attorney submitted a paper to the court for an improper purpose." *Id*. Thus, Defendants are correct insofar as they represent that the court in *Maxxam* held that the Rule 11 inquiries of frivolousness and improper purpose are independent and that sanctions for the latter may be imposed in the absence of a finding of the former. Defendants failed to point out, however, the Fifth Circuit's admonition that a district court should be extremely hesitant to impose sanctions for the filing of a legally supportable claim or paper: "Furthermore, [a]lthough a district court is not to read an ulterior motive into a document 'well grounded in fact and law', it may do so in *exceptional cases* . . . where the improper purpose is objectively ascertainable." *Id*. at 580-581 (internal quotation marks and citations omitted) (emphasis in original).

The court in *Maxxam* then discussed at length what might constitute such exceptional circumstances, recognizing the basic premise that subjective motivations for pursuing arguably meritorious claims are "ordinarily of no moment." 523 F.3d at 581. The court first held that the

district court had erred in finding that the FDIC's *sole* purpose for filing the litigation had been an improper effort to obtain the redwoods land. *Id*. at 582. The court then refused to engage in a subjective "weighing" of competing purposes, some legitimate and some not. *Id*. at 582-583. The court concluded that the improper purpose must be objectively determined to be the *sine qua non* for the filing of the claim before a court can engage in a purpose-based inquiry into the filing of a non-frivolous claim: "Yet determining improper purpose by the strength of the various motivations-proper and improper-in bringing suit would lead us too far into the territory of subjective inquiry. . . . Locating purposes is a difficult task itself, but gauging the substantiality of one over the other beyond the sine qua non inquiry pursues an abstraction-an evil thought that animated no act." *Id*. at 582, 583. Unless it can be said with objective certainty that a claim would not have been pursued "but for" the improper purpose, a court is not within its power to impose sanctions for improper purpose alone:

> [A] good faith basis for bringing suit is proof of a proper purpose and increases the difficulty of proving that the suit would not have been filed but for an improper purpose. . . . [I]nsisting that a claim of improper purpose in the prosecuting of a claim contain an element of causation-that the claim would not otherwise have been pursued-in no way undermines this court's insistence that improper purpose is an independent requirement of Rule 11. It rather insists that an improper purpose cannot stand on its own if it lacks this but-for causative force.

523 F.3d at 583. The court then analyzed the FDIC's actions in continuing to pursue the claims in a manner objectively calculated solely to increase the costs of defense and to harass and found that these actions, not the initial filing of the claims, supported the district court's decision to impose sanctions:

> Having rejected a balancing inquiry into the relative strength of improper and proper motivations behind the filing of a suit, the resulting questions are whether 1) the suit at the outset would have been pursued sine qua non, and 2) whether the methods and manner of prosecuting the claim after the initial filing was to impose unnecessary

9

> costs of defense upon Hurwitz. If the invalid purpose, within a mix of other proper purposes, manifests itself in the continuing of litigation for the objectively ascertainable purposes of harassment or delay, sanctions are warranted under the plain text of the Rule or simply under a court's inherent power to control the proceedings before it. Pursuit of the Headwaters would not be an independent tainting factor. Rather, it would be evidence to be coupled with evidence that the case (while not sanctionable for filing) did not pose a threat of liability sufficient to bring Hurwitz to the bargaining table, at least one with the Headwaters in play-that this want of strength was met by prosecuting the claims in a manner calculated to impose high costs. In other words, the FDIC would violate Rule 11 if it filed a case that it reasonably thought had merit, but pursued it in a manner calculated to increase the costs of defense, and it is here where the able district court's findings of improper purpose, grounded in needless harassment and delay, find accord with the Rule. Although the case had sufficient merit to surpass the bar of non-frivolous factual and legal pleading as well as a proper purpose for filing suit, the court recognized that as the case proceeded, the FDIC began to exert other pressures upon realizing that sheer exposure to liability might be insufficient to force negotiation.

523 F.3d at 583-584. "Despite the lack of an improper purpose as the "but for" motivation behind the suit, we affirm the district court's finding of improper purpose because its finding that the FDIC pursued the litigation with redwoods in mind and with a motivation of increasing the costs of litigation and forcing settlement was not clearly erroneous." *Id*. at 587.

The Fifth Circuit's opinion in *Maxxam* is consistent with the multiple cases cited by Plaintiff, opinions issued both before and after the 1993 amendments to Rule 11, in which courts have drawn a distinction between the motives for filing an initial complaint and the motives for filing subsequent pleadings which follow the initiation of suit. In *Townsend v. Holman Consulting Corp*., 929 F.2d 1358 (9th Cir. 1991) the court explained the rationale for treating the filing of an initial complaint with greater leniency than subsequent filings. The court first recognized that, under Rule 11, either the improper purpose or the frivolousness ground is sufficient, standing alone, to support an award of sanctions. 929 F.2d at 1362. The rule ought to be applied differently, however, the court reasoned, with regard to the filing of initial complaints:

> Although the "improper purpose" and "frivolousness" inquiries are separate and distinct, they will often overlap since evidence bearing on frivolousness or non-frivolousness will often be highly probative of purpose. The standard governing both inquiries is objective. With regard to complaints which initiate actions, we have held that such complaints are not filed for an improper purpose if they are non-frivolous. Since subjective evidence of the signer's purpose is to be disregarded, the "improper purpose" inquiry subsumes the "frivolousness" inquiry in this class of cases. The reason for the rule regarding complaints is that the complaint is, of course, the document which embodies the plaintiff's cause of action and it is the vehicle through which he enforces his substantive legal rights. Enforcement of those rights benefits not only individual plaintiffs but may benefit the public, since the bringing of meritorious lawsuits by private individuals is one way that public policies are advanced. As we recognized in *Zaldivar*, it would be counterproductive to use Rule 11 to penalize the assertion of non-frivolous substantive claims, even when the motives for asserting those claims are not entirely pure.

929 F.2d at 1358. (internal citations and quotation marks omitted). *See also Sussman v. Bank of Israel*, 56 F.3d 450, 458 (2d Cir. 1995) (citing *Townsend*, *supra*, noting that several circuits have distinguished between the Rule 11 analysis with regard to complaints and other court papers: "whatever the analysis applicable to motions and other papers filed after the commencement of the litigation, special care must be taken to avoid penalizing the filing of a nonfrivolous complaint, for otherwise a plaintiff who has a valid claim may lose his right to vindicate his rights in court.") (internal quotation marks and citations omitted). In *Sussman*, the court held that the district court had erred as a matter of law "in concluding that it is improper for an attorney to file a nonfrivolous complaint in a new and proper forum partly as a means of enhancing his client's chances of obtaining the settlement of another pending action." 56 F.3d at 456.

The cases relied on by Defendants as supporting an opposite conclusion do not involve the filing of an initial complaint. *See, e.g., Cohen v. Virginia Elec. & Power Co.*, 788 F.2d 247, 249 (4th Cir. 1986) (imposing sanctions for the filing of a motion to amend which the filer had intended to withdraw in the face of any opposition); *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 805

11

(5th Cir. 2003) (imposing sanctions for requesting a writ of execution following judgment where it appeared that the execution of the writ was unnecessary and was obtained solely for the purpose of publicly embarrassing the defendant and finding no legitimate purpose whatsoever for obtaining the writ). Defendants do not adequately address the important distinction between the filing of an initial complaint and the filing of subsequent court papers.

Even under Defendants' proffered test, sanctions can be imposed only in the most extreme and unusual circumstances if the underlying argument or motion is legally and factually sound. Defendants quote somewhat selectively from another Fifth Circuit case, *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 537 (5th Cir. 1990) in an effort to distinguish *Sheets* as a pre-1993 decision. But the court in *Sheets* fully recognized that the two subsections of Rule 11 provide independent bases for imposing sanctions, but noted that only in extreme cases could a nonfrivolous filing be the subject of sanctions: "Although the filing of a paper for an improper purpose is not immune from rule 11 sanctions simply because it is well grounded in fact and law, only under unusual circumstances - such as the filing of excessive motions - should the filing of such a motion constitute sanctionable conduct." 891 F.2d at 538.

Plaintiff filed the instant action, he claims, because "it was more expeditious to sue the individuals in a separate and narrowly limited action which could move forward with dispatch," and because "[i]n light of the corporate defendants' financial difficulties, a financial award against individuals would be most welcome." (Pl.'s Resp. to Rule 11 Mot. 2.) At the hearing on this matter, Plaintiff's counsel reiterated that Plaintiff pursues the individual Defendants, who are not parties to the MDL Litigation, in the instant action in hopes of a quick and unopposed financial recovery based on admitted and circumscribed illegal conduct. Counsel also pointed out his hope that securing a

12

quick judgment against the individual Defendants in *Stanford* may place his class members ahead of others who may subsequently obtain judgments in related litigation that might find themselves in competition for the same assets in satisfaction of those judgments. While Plaintiff has conceded mixed motives in pursuing this case against the individual Defendants, the Court cannot conclude that Plaintiff's motive to obtain evidence from the individual Defendants that might be useful in its prosecution of its case against the corporate Defendants in the MDL Litigation is the *sine qua non* of its filing of the *Stanford* Complaint. Other legitimate bases are articulated by the Plaintiff and are apparent to the Court. Defendants cannot seriously dispute this.

Of critical importance to the Fifth Circuit in *Maxxam*, the case on which Defendants' place principal reliance, in upholding the district court's imposition of sanctions, was the FDIC's continued harassing conduct in *pursuing* the mixed-motive litigation subsequent to filing the complaint. Sanctions were appropriate, the Fifth Circuit concluded, not because the FDIC filed the case for an improper purpose but because "as the case proceeded, the FDIC began to exert other pressures upon realizing that sheer exposure to liability might be insufficient to force negotiation." 523 F.3d at 584. In the instant case, beyond the filing of the Complaint, there have been no allegations that Plaintiff has pursued this litigation to needlessly increase the costs of defense or to thereby exert pressure on the individual Defendants beyond the mere specter of the individual liability of Messrs. Corbin, Cooley and Larson. Nor have the Defendants alleged any extreme or harassing behavior, such as the filing of excessive motions. To be sure, such a motivation may manifest itself as the case proceeds and the Court will remain open to challenges to such behavior, which might bring the case closer factually to the conduct that the Fifth Circuit found sanctionable in *Maxxam*.

13

In short, Defendants have not provided the Court with any authority to support their argument that the filing of an admittedly colorable complaint, albeit in part for the purpose of stimulating a settlement in another litigation matter, is sanctionable under Rule 11. The Court concludes that the filing of the *Stanford* Complaint does not constitute sanctionable conduct under Rule 11.

## IV.   CONCLUSION

The Court GRANTS Defendants' motion to strike the Joint Declaration of Max Wild, Matthew S. Wild and John M. Perrin (Dkt. No. 32), permitting only the filing of Exhibits B-G to Dkt. No. 22-2;

The Court STRIKES the remainder of the Joint Declaration (Dkt. No. 22-2);

The Court DENIES Defendants' motion for the sanction of dismissal under Rule 11 (Dkt. No. 19).

IT IS SO ORDERED.

S/Paul D. Borman  
PAUL D. BORMAN  
UNITED STATES DISTRICT JUDGE

Dated: March 14, 2011

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 14, 2011.

S/Denise Goodine  
Case Manager